which is Shell v. Oklahoma Supreme Court Justices 20-6044. Good morning your honor if you're ready for me to proceed. I just had to pick up some stuff so Mr. Dick you're going to argue this go ahead. Yes your honor good morning Anthony Dick for plaintiff appellant Mark Shell I'm gonna do my best to reserve five minutes of rebuttal time excuse me if I may so I'll do my best to stop talking after ten minutes have elapsed. No one no one has succeeded yet well I guess one attorney has succeeded today. Hope springs eternal. It is a fundamental principle of the First Amendment that the government cannot force individuals generally to join and give financial support to an organization that engages in political and ideological advocacy that they oppose. Defendants in this case do not really dispute this general First Amendment rule instead they rely entirely on the argument that the Supreme Court's decision Keller somehow creates an exception to the First Amendment rule and authorizes compulsory membership and subsidies for bar associations. When I submit that argument is based on just a clear misunderstanding of Keller and what Keller's actual holding was as opposed to the mere dicta of Keller. So to understand what the actual. Let me pause just a second on that. We have been instructed that lower courts have to accept and give way to dicta as well as holdings by the Supreme Court. Isn't that correct? That's correct your honor but as I explained in my brief there is an exception for when the dicta of the Supreme Court conflicts with the Supreme Court's actual holdings and when the dicta of the Supreme Court has been eroded by subsequent holdings of the Supreme Court. So in this case we think that it's quite clear if you read Keller that the actual holding of the case is that mandatory bar dues and membership are subject to the same constitutional rule under the First Amendment that applies to mandatory public sector union dues and so at the time when Keller was decided of course that was a different constitutional rule than exists now but the reason we think that the clear equation between our associations and public sector union dues is because that's what was necessary to overturn the decision that Keller was actually reviewing in that case. So you have to look at what the posture was as the case came to the Supreme Court in Keller and the posture of the case was that the California Supreme Court had rejected a First Amendment challenge just categorically rejected a First Amendment challenge to mandatory bar dues and what was the ground for rejecting that challenge? The California Supreme Court said our associations are not private entities they're government agencies so they're categorically exempt from First Amendment scrutiny. So the people First Amendment plaintiffs the First Amendment plaintiffs went up to the United States Supreme Court and asked the court to overturn the ruling that bar associations are state agencies exempt from First Amendment scrutiny. So the US Supreme Court was confronted with the question should we because they are government agencies and who won that case? The people who won that case were the First Amendment plaintiffs. They convinced the US Supreme Court to overturn the California Supreme Court's holding that bar associations are categorically exempt from First Amendment scrutiny when they collect mandatory dues. They said that's not true they're not exempt from scrutiny. So that is the disposition of the case that's the core of the holding to reverse what the California Supreme Court said. It's untrue that they are exempt from First Amendment scrutiny and then what is the other component of the holding? It was the reasoning necessary to that result and the reasoning necessary to the result was they're not government agencies they're analogous to public sector unions that collect compulsory bar dues. So that was the holding in the sense of that's the reasoning and that is the result to reverse the lower courts decision exempting them from First Amendment scrutiny and they said they're analogous so they have to be subject to the same constitutional rule that public sector unions are subject to. So we think that's the holding and then there was to be sure some subsequent dicta where they said and here's how we think that same constitutional rule would apply based on the case of Abood which was the case that then supplied the constitutional rule for public sector unions. And so everything the court went on to say about how it thought the Abood rule would apply to the case of mandatory bar association dues was dictum because it was not necessary to the disposition of the case which was to overturn the California Supreme Court's holding that mandatory bar associations are categorically exempt from First Amendment scrutiny. So we think that just leads very clearly to the place that the holding is apply the same constitutional rule that applies to public sector unions after Janus that constitutional rule is exacting scrutiny and the state doesn't even try to explain how it could possibly satisfy that constitutional rule. Do you find it surprising that Janus didn't indicate that it was overruling Keller? No your honor we don't think it did overrule Keller and we don't think it had any reason to address bar dues because the parties there made any arguments about bar dues but again this is an essential point of our argument we're not asking anything about overruling Keller we don't think Janus overruled Keller at all because we think all Keller held is that bar associations are subject to First Amendment scrutiny and the proper constitutional rule is the same one that applies to public sector union dues. So it didn't get into how that standard applies in the holding it didn't say anything about what court should do when applying the constitutional rule it didn't even say what the constitutional rule is it just said it has to be the same constitutional rule so we're asking you to apply the holding of Keller which is to say that you must apply the same constitutional rule that applies to public sector union dues. After Janus it's quite clear and binding on this court that the constitutional rule is exacting scrutiny that's not necessarily fatal if the government could show that it had a real need to serve a compelling interest by forcing people to join a bar association and forcing them to pay bar dues to subsidize political ideological speech if they could make that showing then they could maybe justify what they're doing but they can't make that show. Let me let me ask you I mean there is a very strong interest in having the disciplinary actions taken against the bar against members of the bar and violated and part of the the principal reason for requiring attorneys to join a bar association is to pay for these activities that rather than imposing that on the public at large those who benefit from being members of the bar most should pay that. Do you have any concern if say you didn't have to belong to the bar association but you had to pay a fee every year which goes to those give information about CLE programs maybe develop CLE programs things like that not unlike the dues that you pay to the 10th Circuit as a member of the 10th Circuit bar. Would you have any problem with that sort of arrangement? Well your honor we think that actually illustrates the point that there is a substantially less restrictive way the state could achieve those goals here and we think there are 20 other states that regulate the profession and serve those goals without requiring mandatory bar membership and without requiring mandatory bar dues. So we think if you had a licensing fee for example you want to be licensed to practice law in the state pay a licensing fee and the regulatory agency can use that fee to cover the costs of its regulatory functions. There's no need to make us join a private organization pay dues to a private organization that engages in political and ideological advocacy. So yes we think that it probably would be permissible to require a licensure fee for a regulatory body to do its work but that proves the point. Why are they making us join and pay money to an organization that engages in political and ideological advocacy and talks about outdoors environmentalism, talks about you know disparaging wealthy conservative libertarians, whatever that means, talks about oil and gas regulation. There's no need. It's an egregious First Amendment violation and completely unnecessary. But under the arrangements in Oklahoma that's all you actually have to pay for with your dues. You don't have to pay for any of the ideological activity. And so your problem is you don't want to be considered a member of this organization. Is that what it boils down to? No that's incorrect your honor because what the Bar Association considers germane to its mission actually does include a substantial amount of political and what they can compel people to pay for. It includes things like talking about judicial selection, tort reform, publishing a bar journal that talks about Al Gore and his environmental policies. If that's offensive, offensive to the First Amendment, then you can challenge having to pay those dues. Let's say you win all your challenges so that you don't have to pay for that stuff. You partisan elections is inappropriate. That's ideological and you shouldn't have to pay. If you prevail on that, is it still your position that you shouldn't have to be a member? That being a member is offensive? Yes your honor. So two quick things about that. Number one, that was still the case in Janus. They said you can't force people to pay and then seek a refund and go through a lengthy and expensive arbitration process to get your consent before they can make you pay money to them. If they say they're going to engage in this type of political and ideological advocacy, you need to get affirmative consent beforehand. You can't make them go through this refund process. But on the second point, yes we do think that forcing people to join is a separate injury. We think that the Keller case clearly reserved this question when it said, you know, there's a separate question about whether membership forcing you to join an organization that engages in non-germane political and ideological advocacy would be permissible and we think that's clearly the case here. So we think this falls into that question of compulsory membership as a distinct injury that was reserved in Keller. I do see I'm at four minutes so I would like to reserve time for a bottle unless there are questions. I just want to ask a question about this case. Yes sir. Apart from the law, you're saying all there's this offensive material that is non-relevant, not germane, but all but you have a, I believe it's a two-year statute of limitations and all of the stuff that you claim to be, you know, about Al Gore and about various policy issues precede that two-year statute of limitations. So that the only statements that you cite about what the Oklahoma Bar-Journal reported in the two-year time frame appear to me very germane to the practice of the law. So I don't know, I mean, this case has some very difficult legal issues in it, but it seems to me this particular case that you brought may suffer a real problem because on the record we can only consider a few of the Oklahoma Bar-Journal articles and they all clearly appear to me to be germane to the practice of law. So I'd like to get your comment on that. Yes, Your Honor, we're not seeking retrospective relief, of course, in the way that we would need to do if we were attacking previous expenditures for being unconstitutional. We're merely saying we're seeking a prospective injunction to prevent the bar from engaging in this type of unconstitutional activity. But you don't get a prospective injunction without proof of a violation and we look for proof of violation to conduct within an appropriate statute of limitations period. Your Honor, the proof of the violation is what the bar's policies are and what they allow the bar to do and it's quite good evidence. Within the statute of limitations period and your only proof, I mean the Bar Association's policies can change. They do obviously change. So your proof has to be within the statute limitations what are their policies and the policies of the articles, as far as I can tell, are all quite germane and non-offensive to legal practice in this particular case. If you look at the policies that continue to exist, including the new policy, they authorize the bar to engage in and they don't disavow this. I think they're quite willing to conceive that they do have authority to publish the Bar Journal to speak out on issues that affect and they will say this is permissibly germane. I don't want anything about what they would say or wouldn't say. All I can deal with is the record. What is on the record? And the bar solicitation on this record saying we can make statements about who ought to be the next president. I just simply see statements allege here are things that were published that were offensive. That's all I see. And those things, some of them, were outside the statute of limitations period. Your Honor, if you look at, for example, just the bylaws of the OBIS we allege in our complaint, it says that they have the authority to make recommendations on all kinds of legislation, selection. They have legal related, legal court. Right, which which is again related. Again, but that's that's the precisely the type of thing that even if it is legally related would be unconstitutional still to force us to support under the rule of Janus, under the same Constitution. If you're arguing that Janus goes that far, I think it's just plain contrary to Lathrop and Kelly. If you're trying to say that that Janus abrogates the ability for the bar to speak about legally related subjects, then I think that's a very hard argument to make. I appreciate that, Your Honor. Two quick points. So number one, again, we're not saying that it overturns and prevents the bar from doing that. We're just saying it prevents the bar from forcing us to pay for it, which is a very important distinction. And two, I think if you look at Article 8, Section 4 of the OBIS bylaws, they provide that the OJ may endorse any proposal for the improvement of the law, procedural or substantive, with no restriction on subject matter. So I think it's quite... But it's all preceded by improvements of the law. But improvements of the law can be, you know, we think that the law should make penalties less strict for crimes, right? When you get a case where that's violated, you bring it, but you got to bring it within two years. Well, no, Your Honor, because we're seeking prospective relief against the ability of the bar has to pay for money. I know, but prospective relief is, that does not eliminate your need to prove violations within a time that we can legally take cognizance of them. But, Your Honor, the violation is the taking of the money, which can be used for the purposes spelled out in the bar's documents. And so we think that because those purposes clearly authorize those uses, that it is unconstitutional and those violations have occurred. But you're leaning on the statement about related to the law, and you're saying that is such a broad statement that that by itself is unconstitutional. No, Your Honor, we think that that is a force your eye, but we also think that even if there is something that's germane and related to the law, under the rule of Janus, which now applies in light of the holding of Keller, that the same constitutional rule has to apply to public sector unions and bar associations, we think even forcing people to support quote-unquote germane speech is subject to exacting scrutiny, which cannot be survived because there are many ways that the bar association's regulatory functions could be performed without requiring us to subsidize that type of germane speech. And your exacting scrutiny you get to because of the we think that it didn't overturn it, we think that Keller said you apply the same constitutional rule. So we're not saying to overturn that holding, we're saying follow that holding. The same constitutional rule is what Janus requires, and that is exacting scrutiny. So we're saying follow the holding of Keller, apply the same constitutional rule, apply exacting scrutiny to any requirement that we pay dues for an organization engaging in political ideological advocacy, even if it is germane, that still is subject to exacting scrutiny under the Janus rule, which is what the holding of Keller requires. It's not overturning Keller, it's just applying that holding of Keller, which says apply the same constitutional rule. Judge McHugh? I'm fine. No, no, no, no, no, no, no, no, ask your questions. My question was whether you can point to any practice in this case that exceeds the practices by the bar upheld in Lathrop. Well, of course, Lathrop did not uphold any particular practices because the court said it wasn't clear enough on the record there what practices were engaged in by the bar. So, you know, it expressly declined to decide, as Keller explained, Lathrop did not decide the question of whether you can file a successful First Amendment challenge to a bar association that is using your fees for political and ideological advocacy you're opposed to. So that's the issue that was left open in Lathrop. I mean, I think there are things here that... But they upheld the mandatory bar dues, right? They said mandatory bar dues could be permissible in a bar association just on their face if it were just engaged in regulating the bar and not doing any political and ideological advocacy. So that's, I think, the issue that they were talking about. They weren't talking about the issue presented here of political and ideological advocacy, right? All of those issues were raised, weren't they? They were raised, but the court didn't address them because it found that the record wasn't clear enough and there had been, you know, judicial notice of a bunch of things. So it wasn't like the present case where we were on a motion to dismiss. So if there are questions about what the bar is doing and what kind of factual issues that court thinks should be resolved, that would be appropriate for the district court to look at. But we think our allegations should be taken as true, that there is non-germane speech that's being funded and being paid for by the bar. Of course, they won't show us everything that they're doing. So we think it would be quite unfair on a motion to dismiss not to take our allegations as true and not at least to allow us to have discovery on what the bar is using our money for. I'd like to pursue this issue of the offense that might be taken from being a member of an organization that takes positions. And I'd like to read you a passage from Justice Harlan's concurrence in Lathrop and ask you to of the opinion. He says, I do not think a subsequent decision by the representatives of the majority of the bar members to devote some part of the organization's funds to the furtherance of a legislative proposal so identifies the individual payer of dues with the belief expressed that we are in the Barnett realm. I assume that's the Pledge of Allegiance case he's referring to. Right. That we are in the Barnett realm of quote, asserted power to force an American citizen publicly to profess any statement of belief or to engage in any ceremony of assent to one. End of quote. Which I take to mean that you you shouldn't take offense at something the bar does that you might disagree with because you're not going to be tarnished with that. No one's going to assume that you believe that. How would you respond to that statement? So I think you can certainly recognize that it's not as significant of an infringement on someone's First Amendment rights as it would be to force them to actually profess by word or deed there's their statement of belief in some orthodoxy as was the case in Barnett. But it still is quite a significant First Amendment infringement to force someone to join an organization that engages in political ideological advocacy. I don't think that can seriously be disputed. I mean if they said you've got to join the Republican Party to be a practicing member of the bar then that of course is going to be a significant impingement on your First Amendment rights even if you don't have to do anything else. Even if you don't have to say anything just the forcing of joining an organization is by definition a serious infringement on your right of free association. And again I just like to emphasize it's completely unnecessary in a case like this because there are 20 states that regulate the practice of law and have all of these successful functions without making anybody join a bar association. So when you are looking at this completely unnecessary type of infringement on First Amendment rights nowhere in the law does that ever just get a shrug. It's always got to be struck down because there's no need for it. You're just forcing someone to join an organization without any justification and for that reason we think the First Amendment cannot tolerate. Thank you. Your time has expired believe it or not. Mr. Volchak. May I please the court Daniel Volchak for the defendants. Both of plaintiffs' challenges to the dues requirement and to the membership requirement both are foreclosed by Supreme Court precedent. So starting with the dues requirement the Supreme Court in Keller unanimously rejected the same claim plaintiff makes here. Keller said and I'll quote the state bar may constitutionally fund activities germane to its goals out of the mandatory dues of all members. Now as you just heard plaintiff says that that language and other similar language of the opinion is not Keller's holding and he has two basic arguments. So first he says the holding in Keller you heard it is only what was necessary to reverse the California Supreme Court. But plaintiff cites no authority for the proposition that a case is holding is only what was necessary to reverse. And I submit we know that that's wrong. For example this court sometimes addresses issues that a district court didn't reach at all. It's surely not the case that whenever this court does that everything the court says on an issue the district court didn't reach is dicta. Again plaintiff offers no authority for that. Now there is authority saying that a holding is only what was necessary to the result. But the result and reversal are not the same thing. Plaintiff equates them but Keller itself shows that they are not the same. The result in Keller was not just that the California Supreme Court was reversed. The result was that the First Amendment challenge to the dues requirement failed. Plaintiff tries mightily in his briefing not to say that but he finally does on page 29 of his opening brief. So the result was that the bar dues were constitutional. Now plaintiff again tries to avoid this by saying repeatedly and he said it again this morning that the US Supreme Court ruled for the plaintiffs. I am quite sure that Eddie Keller and the other plaintiffs in Keller disagree with that. They won on the threshold question of whether bar speech is government speech but they lost on the underlying issue of whether bar dues are constitutional as long as a bar has the teachers versus Hudson procedures in place. So plaintiffs claim that Keller's holding is limited to what is necessary to reverse. Again no authority and it's wrong. Let me ask you about the last the penultimate paragraph of Keller because it seems to me it clearly leaves open the claim being made here. So well maybe if you're very familiar with it well let me read it for the benefit of everybody. It'll take a minute. Justice this is the unanimous opinion and this is what the opinion says. In addition to their claim for relief based on respondents use of mandatory dues, petitioners complaint also requested an injunction prohibiting the state bar from using its name to advance political and ideological causes or beliefs. This request for belief for relief appears to implicate a much broader freedom of association claim than was at issue in Latham. Petitioners challenged not only their compelled financial support of group activities but urged that they cannot be compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory financial support is justified under the principles of Latham and Abboud. The California courts did not address this claim and we declined to do so in the first instance. The state courts remain free of course to consider this issue on remand. Isn't that at least one of the issues raised in this case? So a threshold response Judge Hartz what I was talking about at the outset of my argument was the plaintiff's challenge to the dues requirement. This paragraph you read goes to the membership requirement and I'm happy to address that now. I hope to get back to the dues. Go ahead. I'm sorry I wanted to make sure you can you can talk about the dues thing then we can switch to membership if you'd like. Very good your honor. I will then proceed with my second argument about Keller's holding and why it does not foreclose his dues challenge that is his free speech challenge. So he says you heard it that what Keller held is that the First Amendment rule for mandatory bar dues blindly tracks forever the First Amendment rule for mandatory union dues. Now there are several fatal problems with that characterization of Keller's holding. First there is no case support for it. Keller has been cited about 250 times by courts yet plaintiff doesn't cite one case embracing his reading of Keller's holding. So no case saying that the holding was that the First Amendment rule for mandatory bar dues tracks forever the First Amendment rule for mandatory union dues. There is just no authority for that reading and there's ample contrary authority including cases from the Supreme Court. There's the Southworth case that we cite. There is the Harris versus Quinn case that we cite. In fact Southworth said that in Keller quote we held that lawyers admitted to practice in California could be required to join a state bar association and to fund activities germane to the association's mission. That's flatly inconsistent with plaintiff's argument here about what Keller held. Now in his reply brief plaintiff offers various responses to Harris and Southworth and all of the other Court of Appeals and district court cases we cite. Just repeat that. I don't want to cite but just that last Supreme Court case I just didn't write it. It's Board of Regents versus Southworth and it's page 231 of the opinion. It is cited in in our brief and in the reply brief as well your honors. Yes I just didn't have the case written down yeah. So your honor plaintiff's responses to all the cases we cite including Southworth and Harris. I would disagree with the responses on their merit but the point is what they don't say. They ignore that the court did not describe Keller's the way plaintiff describes it. And that's the whole dispute here your honors right. Everyone agrees the language in Keller we we point to the language in Keller that plaintiff points to it's all in the opinion. The question is what was the holding. Southworth and and Harris versus Quinn both described the holding the way we describe it as did for that matter if you want to look at beyond majority opinions to the most recent Supreme Court opinion of any kind discussing the holding. It's the dissent from denial of cert in the Jarchow case J-A-R-C-H-O-W also cited in the briefs. Justices Thomas and Gorsuch characterized Keller's holding just as we do and in fact they said that the claim like plaintiff's claim here was foreclosed by Keller. Again inconsistent with his position. Now that's the first fatal problem with plaintiff's main argument. No case support. The next problem is the holding he posits for Keller your honors would be exceedingly odd. Again he says that Keller rather than adopting a specific substantive immutable First Amendment rule for mandatory bar dues he says Keller held that the rule just tracks forever the rule for union dues. I submit that is not how courts decide cases. They do not when they are presented with this particular scenario or particular set of circumstances say the rule for this scenario tracks the rule for another scenario and plaintiff cites no other case with such a holding. So his position would apparently make Keller unique in all of American history and your honors if you want to see just how odd the holding that he posits would be under his position if Keller itself that same case came before the Supreme Court today the court under his position would say we adhere to the holding in Keller and therefore reach the opposite result that we did in Keller. Right same holding First Amendment rule for bar dues tracks the First Amendment rule for union dues but the opposite result because of according to plaintiff Janus. That I admit it's why no court has ever adopted plaintiff's reading. The last problem it's even odder your honors plaintiff does not just say that the bar dues standard the bar dues rule tracks union dues. He says the bar dues stand well excuse me what I should say is that the court in Keller the sentence he's relying on did not just say the same constitutional rule as union dues it says the same constitutional rule applies as public and private union dues. Now plaintiff said this morning in his argument just public union but the ends with unions representing public and private employees. So his position is that the bar dues rule tracks two other rules public union and private union of course that raises the problem of what if those two other rules diverge which does Keller's holding track or which does the bar dues rule track. It's not a hypothetical scenario your honors it has happened. Janus overruled the boot and changed the rule for public union dues but it did not overrule the different case called Ellis which is discussed in Keller which set the rule for private union dues. In fact Janus made clear that and I will quote Janus a very different First Amendment question arises end quote with public union dues and private union dues. That's page 2479 of the Janus opinion in the Supreme Court reporter. Now your honors the point is not that this court should decide whether the rule for bar dues tracks public union or private unions. Point is that plaintiff cannot be right in saying that Keller held that the First Amendment rule for union dues. So his creative characterization of Keller's holding is wrong cited by no authority and under Keller's actual holding as described by Southworth as described by Harris versus Quinn his dues challenge is foreclosed. Now Judge Harts I want to turn to the membership challenge and if I can just lay a little bit of groundwork Supreme Court in Lather projected the same challenge. Plaintiff in that case said he did not want to be forced to associate with a state bar that he said engaged in what he called political and propaganda activities. So plaintiff's argument this morning that Lathrop was just about membership and a bar that engaged in activities everyone agrees is proper and not political or ideological speech is flatly refuted by the by the opinion itself and as to the membership claim Lathrop said quote we are unable to find any impingement upon protected rights of association. Now that was a plurality opinion for four justices but as Keller later said two other justices would have gone even further in rejecting the free association claim. So the plurality opinion is actually the controlling opinion the narrowest opinion. And if we just as Lathrop that would be good but then we've got Keller later saying it's still an open issue. So that is one of plaintiff's two arguments that as to why his claim is not foreclosed and it's the same question Judge Harts was asking so let me go to that one first. I do want to go to his argument premised on Lathrop itself but he says as Judge Hart read as Judge Harts read the court left open in Keller a question at the end. Now there are two reasons that that doesn't help plaintiff. Plaintiff says that what was left open was the question of mandatory membership in a state bar that engages in non-germane activity and he says that's his claim here. Both parts of that are wrong and either one is enough to defeat his claim. That is that I was reserving and number two if it was as the court was discussing with Mr. Dick this morning the amended complaint does not plausibly allege any non-germane expression by the Oklahoma Bar Association certainly not within the statute of limitations right as was being discussed. What's alleged is two categories of things really. The the engagement in lobbying lobbying activity regarding legislation which we know from Keller and Lathrop is okay as long as the subject matter is germane and here it is because the two pieces of legislation discussed in the complaint are about tort reform and about the selection of members of the Judicial Nominating Commission so that's the first category that's all germane. Second category is the Oklahoma Bar Association journal articles and all of them certainly again within the two-year limitations period as was being discussed are all germane. They're mostly about campaign finance which is germane because Oklahoma's judges and justices stand for election so there is no plausible allegation in this complaint that the Oklahoma Bar Association engages in non-germane expression so even if Keller reserved the claim that plaintiff says it doesn't matter he has not alleged that claim here. He might point to paragraph 113 that's a bare legal conclusion all it says is the Oklahoma Bar Association engages in non-germane expression. There aren't any factual allegations to back that up and Iqbal and Twombly from the Supreme Court tell us that a bare recitation formulaic recitation of the elements of a cause of action is not enough to plead a plausible claim for relief. Now I do want to go to his argument based on Lathrop because you also heard it this morning he says Lathrop didn't fully resolve the membership challenge because of the gap in the record about whether the state bar used the mandatory dues to fund the expressive activity. Two reasons I submit you know that argument is wrong. First of all the language he's pointing to comes from the courts discussion about the dues challenge about the free membership challenge. The second reason you know he's wrong your honors is that it would not have made any sense for the court to point to that gap in the record as a reason not to address the dues challenge which is what Keller later addressed and Keller says all this but Lathrop did fully resolve Lathrop fully resolved the membership challenge the challenge the free association challenge that was presented there so the first reason is that he's drawing language from an entirely different part of the opinion to say that it didn't resolve the membership challenge. The second reason you know he's wrong your honors is that it would not have made any sense for the free association challenge right again the gap in the record was did the state bar use the mandatory dues to fund the expressive activity that doesn't bear on a membership challenge that bears on a free speech challenge on a dues challenge plaintiff says this himself on page 10 of his reply brief and he said it again this morning when he talked about being forced to join the Republican Party right if there were a free association challenge here it would not be a defense to say well you're forced to join and we engage in using your money to pay for it that would not be a defense that would be a defense to a free speech challenge a challenge to the dues requirement it would not make sense to point to that gap in the record as a reason not to address the membership challenge the plurality did not point to that gap in the record as a reason to not address the membership challenge it did address the membership challenge it fully resolved it it is the same challenge that plaintiff brings here on the last point I'll make I said there were two reasons on the on the Keller paragraph number one is that he doesn't allege non-germane activity the other is I submit that is not what Keller was reserving and it would have been odd for the court to do that because it said in Keller itself lawyers practicing in the state may be required to join and pay dues to the state bar that's the opening paragraph of the opinion and it said the same thing later on page 13 talking about the reasons for the compelled association what Keller was addressing or Keller was reserving I should say was a claim that went beyond Lathrop that's what the paragraph says it's judge hearts read so to finish my answer to judge hearts the claim that Keller was reserving was a claim that went beyond Lathrop a claim and what was the claim in Lathrop well Lathrop tells us Lathrop was a claim in which quote-unquote the bulk the bulk of the state bars activities the bulk was the phrase that the plurality used the bulk of the bars activities were germane were legitimate for a bar in other words and Lathrop also said this it was not a case in which the bar was alleged to be a sham quote-unquote sham was the plurality's so to make a claim that goes beyond Lathrop to make the claim that Keller reserved a plaintiff must allege that a bar is essentially a sham or at least that the way but let me read that sentence one sentence from that paragraph I don't think that's you fairly characterized what the court was reserving says petitioners challenged not only their compelled financial supportive group activities but urged that they cannot be compelled to that engages in political or ideological activities beyond those for which mandatory financial support is justified under the principles of Lathrop and a boot that's much narrower than saying it's a sham organization much much narrower well so judge hearts the language I'm focusing on and why I why we why we submit what I said a moment ago is you know a claim that goes beyond the claim in Lathrop and Keller now I want to be clear even if agrees plaintiffs characterization of what Keller reserved as I said a moment ago the amended complaint does not make any such allegation and the last point I'll make my time up but to finish my answer it wouldn't be quite odd if that were what Keller reserved given the language I read a moment ago quite clearly showing and and Keller was no doubt a case in which there was non-germane activity gun control nuclear weapons free zone it would be very odd if Keller had reserved that claim we asked the court you know I'm gonna ask you some more questions oh certainly judge hearts we reserve a lot of things because we hadn't thought about it that weren't briefed even though the record makes clear that we could have you know there's a there's record support but let me let me ask you how you feel on the merits of the issue but let's assume it's it's preserved do think that you can compel a lawyer to belong to a bar association that takes positions on ideological and political issues other they go beyond educating the bar making sure members are ethical and things like that yes and I want to expand on that direct answer judge hearts but I have to give it a threshold answer which is that our position is that if the court disagrees that Lathrop and Keller foreclosed this claim it should remand to the district court that was all that the district court decided and those are the only issues that a plaintiff presented in his opening brief for appeal so we have not argued this but I want to address your question fully the answer is yes it goes in part because what what was asked to plaintiffs counsel the the observation from Justice Harlan's concurrence in Lathrop which is that free association principles show and this is in later cases like Roberts versus US JC's that only a free association violation if one could reason if the public if an observer could reasonably attribute the objected to expression to the person who's objecting and that's clearly not the case here as Justice Harlan said no one thinks that every member of the bar agrees with everything that was expressed by a state bar including he wasn't talking about this but including in its bar journal so yes that can be done and in fact that we think Harris confirms that because Harris said applying the same exacting scrutiny it said that its decision in Keller which upheld this sort of compelled association fit quite comfortably within the scheme that Harris was applying that is exacting scrutiny and the last point I'll make didn't answer your question if I can judge hearts is that plaintiff says we know the the challenge would succeed here if it got to the merits because there are 20 other bars that use a different system well that of course is not enough the question is do those other bars serve the relevant government interests to the same degree as the Oklahoma system it may well be the case that those bars do not do as good a job at regulating the bar or do not do as good a job at improving the quality of legal services in the state I don't know that it's not a let even alleged in the complaint so it wouldn't matter but if this case if we ever got to the merits that is a question that would require some further development which is another reason the court shouldn't address it let me give you a not-so-hypothetical hypothetical the American Bar Association a lot of judges believe the American Bar Association does a lot of great things for the law educating people reporting good things 20 years ago a number of I think the felt uncomfortable because the ABA was taking positions on a lot of issues that are litigated in the courts and the appellate judges issued a statement saying we are not agreeing or disagreeing with any of those positions they did not want to be associated with that on further consideration a number of judges decided you know what I think it's probably better that I don't belong that I'm not a member of the ABA because too many people will think that as a member of the APA I'm part of this I'm endorsing it could you compel judges to belong to the ABA can you compel judges to belong to a state bar association that takes positions on ideological issues that the that may come before the courts and what about attorneys who feel strongly you know they've I may disagree with them totally but they don't like the Kansas the Missouri plan for appointing judges they think judges should be elected and they don't feel comfortable belonging if the bar does that isn't that a pretty legitimate freedom of association claim how do you deal with that so judge parts I want to sort of separate out the different parts of that question so to the extent we were talking about a state bar and to the extent we are talking about attorneys that is our submission is the claim that Lathrop addressed and rejected and essentially it said look what is being required here you are required to join to the extent of paying dues you are not required to attend meetings you are not required to vote in elections you are not prohibited from coming out and saying the Oklahoma Bar Association just printed this article I completely disagree with it it's wrong in other words you do not have to ascribe yourself to the views of the of the Oklahoma Bar Association and you are free to disagree with that and the court in Lathrop the plurality plus the concurring justices took the position that the degree of required association is such that it can be justified by the state bars and the state's interests in regulating the bar and improving the quality of legal services in the state now there may be well they don't justify that doesn't wouldn't you have to make a pretty good showing that you need to allow the state bar to do that or else you'd have to adopt the system in you know 20-odd states of just paying a fee as a lawyer or the way the 10th Circuit bar works you pay a fee which goes to educational programs presumably if this were to be being litigated as an as an initial matter or as a as a question of first impression yes there would be a requirement to justify the level of compelled association based on the requisite interest and the degree of tailoring now our submission of course is that is not being done as a question of first impression it's resolved but the court seemed to say and you recall in Lathrop the Supreme Court recounted the plurality recounted that the Wisconsin the Wisconsin bar the Wisconsin Supreme Court had for a time being a voluntary organization and the Wisconsin Supreme Court ultimately decided it was not working it was there were many attorneys were not participating and the Wisconsin Supreme Court's view was that the requisite intelligent active wide-scale membership bar that was necessary was not being achieved now this would have to be litigated again if this is not but they don't have to be because they are foreclosed now just to finish the answer to your question if I may judge Hart the ABA is of course somewhat differently situated it is not a state organization it is not backed up by the power of the state and hence not claiming to be furthering state interest so it's it's in a little bit of a different box but certainly as to state bars and the claim that is being alleged here as to attorneys that is foreclosed by Lathrop and Keller yes the court to affirm any questions by other members of panel oh there's so many questions so I'm gonna give mr. dick two minutes he got two bills less extra than and nobody the attorneys aren't responsible for having one over that was thank you very much I'm happy for whatever time you'll give me just three quick points that I think will be helpful to the court one with respect to what the result of Keller was I think it's just clear what the result was the plaintiffs got everything they were asking for the plaintiffs in that case were arguing for the abode rule and to overturn the California Supreme Court's decision they got exactly what they want I don't know why mr. Balchuk says Eddie Keller thought he lost the case he got everything he wanted he got a relief in overturning California Supreme Court he got the abode rule that he asked for given that he prevailed on all of his arguments there couldn't have been any holding rejecting any portion of his First Amendment claim on the second point he says it would be odd to tie together the rule between mandatory bar associations and union dues in particular because public sector and private sector dues have have different rules that's wrong I mean what what it's happening is you're just saying that the usual First Amendment rule applies to all of these different contexts there's nothing odd about that saying because it's a private entity the usual First Amendment rule should apply and it with respect to the First Amendment that is when you force somebody to join and pay money to an organization engaged in under exacting scrutiny there's not a different rule for private and public sector unions it's the same First Amendment rule which is if there is state action involved forcing you to do this then exacting scrutiny applies the difference between public and private sector unions is there is no state action in the private sector context and that's why you don't get the exacting scrutiny that applies but it's the same First Amendment rule that in the presence of state action you do have to satisfy exacting scrutiny there's no question that there is state action in this case just as there is in the public sector union case finally mr. Volchek says that that Lathrop did not address the member the membership issue or excuse me he said that it did not address the dues issue it only addressed the membership issue but the reason that argument doesn't work is because what the court said it wasn't addressing was whether you can force someone to pay money to support an organization engaged in these other activities which was the dues question but the membership question is tied to that because the membership question is whether you can force someone to join an organization to engage that engages in the type of activities that the court said it wasn't going to address whether the organization was engaged in there so in other words that question was not resolved because the court did not consider whether the Bar Association in Lathrop was engaged in non-germane activities that the plaintiff objected to the membership question is whether you can be okay your time is expired thank you very much up to you in the middle of a sentence but the sentence took about a minute and a half cases submitted counts are excused